UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

LUZ V. GARCIA,

                        Plaintiff,                    **COMPLAINT**

        - against -                          Civil Action No. 1:19-cv-8482

ANDREW WHEELER, AS ADMINISTRATOR
OF THE UNITED STATES ENVIRONMENTAL          Jury Trial
PROTECTION AGENCY,
                        Defendant.
------------------------------------------------------------X

        LUZ V. GARCIA by her attorneys, the law firm of Coren Law Group P.C., as and for her

Complaint against defendant Andrew Wheeler as Administrator of the United States Environmental

Protection Agency ("EPA"), asserts as follows:

<u>**Nature of the Case**</u>

        1. This is an action is brought pursuant to Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. § 2000e, et seq., Government Employee Rights Act, 42 U.S.C. § 2000e-16a

through 42 U.S.C. § 2000e-16c, 42 U.S.C. § 1981a(a)(1) against Andrew Wheeler, in his official

capacity as the EPA Administrator, for monetary and punitive damages under 42 U.S.C.

§1981a(b)(3) which Luz Garcia ("Garcia") sustained as a result of defendant's discrimination

practices on the basis of her national origin (Hispanic) and retaliation for her prior pursuit of her civil

rights as a federal employee.

        2.  More particularly, Plaintiff alleges that she was unlawfully treated by her failing to be

selected for promotion to positions within the EPA's New York City division, located in Manhattan,

established pursuant to the Comprehensive Environmental Response, Compensation, and Liability

Act of 1980 ("Region 2 - CERCLA Division"). The remedy sought by Garcia is an order requiring

her appointment to one the unlawfully denied positions plus remedial back pay, punitive damages (42 U.S.C. §1981a(b)(3)), and emotional pain, suffering, inconvenience, mental anguish, and other non-pecuniary losses 42 USC § 1981a(b).

3.  The last discriminatory and/or retaliatory act that Garcia suffered at the hands of the EPA occurred on or about October 2, 2018 when she learned that she had not been selected for one of three advertised positions. Had her application been successful, she would have been upgraded from GS-12 to GS-13 classification.

4.  This illegal, wrongful conduct and actions, motivated by discriminatory attitude, were designed and calculated to advance the careers other EPA employees while purposefully stagnating Plaintiff's career and advancement by failing to allow her positions for which she was equally or better qualified than her colleagues.

5.  Additionally, Garcia was subjected to retaliation arising out of her protected activity on several occasions, one of which resulted in a reinstatement order from the Merit Systems Protection Board ("MSPB") reversing an adverse employment action by the EPA and because of complaints she filed the agency's EEO office.

## Jurisdiction and Venue

6. This Court has jurisdiction over this controversy pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 2000e-3, 42 U.S.C. § 2000e-16 and 5 U.S.C. § 7703(b)(2). Venue is appropriate pursuant to 28 U.S.C. § 1391(a) through (c) as a substantial part of the events giving rise to Plaintiff's claims and the discriminatory and retaliatory acts and/or omissions which are the subject of this controversy occurred at defendant's office located within the Southern District of New York.

## Parties

7.  Plaintiff Garcia resides in Jersey City, NJ. She is a Hispanic/Latina woman and a member

of a protected class who engaged in protected activities while employed by the EPA. Garcia speaks English well but does so with a Hispanic accent. Her Hispanic inflected speech was - and continues to be - commented upon and considered by the EPA in its employment decisions.

8.  Since May 2015, she has held the position of Environmental Protection Specialist (GS-12), Clean Air and Sustainability Division/Hazardous Waste Programs Branch/Corrective Action Section, within the EPA's office in Manhattan.

9.  Garcia holds a Bachelor of Science degree in Chemistry and Biology, and Masters of Science degrees in Environmental Engineering and Environmental Education. She is currently pursuing a PhD.

10.  Garcia was originally hired by the EPA in July, 1989 as an Environmental Scientist (classification level GS-12). She remained in that position for about 6 years and for about 2 years, she was also Hispanic Program Manager. In August, 1998, Plaintiff became an Emergency Response Team member holding a position of  RCRA Expert (position level GS-12). In May, 2000, she became an Environment Scientist (position level GS-12) and in September, 2005, she specialized to an Environment Scientist,(Import Contact & Grant P.O. (classification level GS-12). In September, 2011, she transitioned to Environment Scientist, EPCRA, TSCA and Lead Inspector (classification level GS-12). In October 2013, she moved to a Physical Scientist position, Quality Control Review - NPDES (classification level GS-12). All positions were in EPA Region #2.

11.  Garcia's experience includes Superfund site cleanup and work for state agencies, U.S. Navy and an Environmental Quality Board in Puerto Rico.

12. Defendant, Andrew Wheeler, as Administrator maintains an EPA regional office at 290 Broadway, New York, NY 10007 and constitutes "the head of the department, agency or unit" subject to suit on behalf of the agency pursuant to 42 U.S.C. § 2000e-16(c).

13. The Superfund is a United States federal government program designed to fund the cleanup of sites contaminated with hazardous substances and pollutants. Sites managed under this program are referred to as "Superfund" sites.

14. Upon information and belief, John Jeff Josephson ("Josephson") is the Chief of the EPA's New Jersey Projects/State Coordination Section (NJPSCS), Region 2, Emergency & Remedial Response Division/New Jersey Remediation Branch, New York, New York.

15. Upon information and belief, Josephson has held his position as Chief since April 20, 2003.

16. Josephson and Garcia know each other. They were EPA coworkers in the mid-1990's.

### Factual Background for All Claims

17. In or about 1995, the EPA reorganized certain staff assignments. John Gorman became Garcia's supervisor.

18. Gorman routinely made comments to Garcia about her Hispanic accent. He made such comments to other EPA management personnel. He stated, in substance or effect, that he "could not understand" her because of her accent.

19. Upon information and belief, in or about 1995, Garcia filed an EEO claim based on her national origin which was settled by the parties in or about 2003. Gorman was a respondent in that case and the EPA agreed that Plaintiff and Gorman would not be employed in the same office. As part of that settlement Garcia was granted a two (2) year leave without pay to pursue her PhD.

20. In or about 2005, Garcia returned to her position with the EPA and was assigned to its Edison, NJ office location.

21. In or about 2011, the EPA assigned Gorman to the EPA's Edison, NJ office location as Branch Chief.

22.   In or about 2012, Plaintiff filed a complaint with the EPA's EEO office alleging that Gorman's employment at the EPA's Edison, NJ office location was a violation of the 1995 case settlement. The EPA refused to act on Plaintiff's complaint.

23.   In or about 2013, Garcia's section chief retired and Garcia was, once again, subject to Gorman's direct supervision. Thereafter, Gorman twice sought to have Garcia fired. His first attempt at causing Plaintiff's termination was rejected by senior EPA official(s) and Garcia was relocated to the EPA's New York City office but remained generally subject to oversight by Gorman.

24.   Gorman's second attempt to fire Garcia occurred in or about 2014 or 2015 and was based on the grounds of "inappropriate conduct". Gorman's effort was successful and the EPA terminated her. Thereafter, Plaintiff filed an EEO claim asserting that her termination was unjustified and discriminatory.

25.   On or about April 21, 2016 the MSPB, docket No. NY-0752-16-0169-I-1, upheld Plaintiff's claim and issued a decision reinstating her. The MSPB found that the EPA failed to prove a charge of inappropriate conduct.

26.   On information and belief, Garcia's EPA personnel file contains information regarding her EEO claims of national origin discrimination and the MSPB decision.

27.   Upon information and belief, after the April 21, 2016 MSPB decision, in or about May 2016, a meeting was held among EPA Region 2 managers to discuss the MSPB decision and Garcia's reinstatement.

28.   On information and belief, at said meeting, Garcia's EPA personnel file personnel file information was shared among EPA Region 2 officials.

29.   From October 11, 2017 to October 24, 2017, the EPA posted Vacancy Announcement Number RTP-R2-MP-2017-0041 for a GS-13 level position referred to as "Life Scientist/

Environmental Engineer/Physical Scientist (Remedial Project Manager)" ("2017 Position").

30.  Plaintiff applied for the 2017 Position. She was qualified because she had both the education and experience required.

31.  Josephson and two EPA managers composed EPA's hiring panel for the 2017 Position ("Hiring Panel"). The Hiring Panel conducted resume reviews and candidate interviews.

32.  Upon information and belief, with regard to the 2017 Position recruitment action, on November 1, 2017, Josephson received an email titled "Certificate of Eligibles is Available for RTP-R2-MP-2017-0041" which provided instructions regarding with respect to this announcement and such instructions were utilized in this recruitment action by the Hiring Panel.

33. On information and belief, the Hiring Panel did not select Garcia because she supposedly did not "articulate" her answers to interview questions as well as other candidates. This is related, in whole or part, to her speaking Hispanic accented English.

34.  Upon information and belief, there was no scoring or rating system used by the Hiring Panel in their consideration of 2017 Position applicants.

35.  Upon information and belief, the Hiring Panel heard Garcia's Hispanic accented speech and had full knowledge of Garcia's prior EEO complaints and protected EEO activity.

36.  In or about 2017, Stephanie Wilson, a Caucasian woman with less experience and education than Plaintiff, was selected for the 2017 Position.

37.  Wilson  did not remain long in the 2017 Position and the EPA was caused to refill the position. The EPA did not use the applications it had previously received for the 2017 Position. Instead and rather than considering Garcia, the EPA allowed another employee, Julio Vazquez, to laterally transfer into the 2017 Position -  even though the position was listed for promotion, not transfer.

38.  From May 10, 2018 to May 31, 2018, EPA Region 2 posted Vacancy Announcement Number RTP-R2-MP-2018-0039 for several positions including: "Series 0401 - biological sciences"; "Series 0819 - environmental engineering" and "Series 1301 physical science." All GS-13 level positions ("2018 Positions").

39.  Garcia applied for the 2018 Positions as she was qualified because of her education and experience.

40.  On information and belief, EPA Region 2 managers involved in making decisions as the 2018 Positions were aware of Garcia's Hispanic accented speech and her prior EEO activity.

41. On information and belief, no candidates for the 2018 Positions were interviewed as the same candidates applied and had been interviewed for the 2017 Position.

42.  On information and belief, the hiring panel for the 2018 Positions was aware of that Garcia was not selected for the 2017 Position because of her accented "articulation" of answers to interview questions.

43.  On information and belief, on or about July 2, 2018, Kimberly O'Connell, Selecting Official for the 2018 Positions, requested Josephson provide information concerning the results of the recruitment action under RTP-R2-MP-2017-0041.

44.  On information and belief, on or about July 2, 2018, Josephson provided O'Connell responses to the interview process, overall impressions of the interview panel that resulted from that interview process and on the Garcia's performance during the period she worked in EPA/R2-ERRD.

45. Garcia was not notified of her non-selection for the 2018 Positions and EPA Region 2 management refused to meet with her to discuss the circumstances of her non-selection.

**<u>Exhaustion of Administrative Remedies</u>**

46.  Pursuant to 29 C.F.R. § 1614.105(a)(1), on or about October 17, 2018 Garcia contacted

an EEO counselor to request an initial counseling session. Garcia met with the counselor and asserted that the EPA failed to fairly consider her for any of the 2018 Positions. More specifically, she complained that she had been discriminated against because of her national origin and retaliated against for her past protected activity.

47. The EPA's EEO Office was not able to resolve Garcia's claim and by Memorandum dated November 13, 2018, the EPA issued her a Notice of Right to File a Discrimination Complaint with the EPA Director of the Office of Civil Rights ("OCR").

48. On or about November 28, 2018, Garcia filed a complaint with the OCR (Discrimination Complaint No. 2019.0006-RO2).

49. By letter dated January 31, 2019, the OCR advised Garcia that her discrimination charge had been accepted for investigation and that she had the right to file a civil action in an appropriate United States District Court 180 days after the date of filing of her administrative complaint.

50. More than 180 days have elapsed since the filing Garcia's OCR administrative charge and she has fully complied with all prerequisites to jurisdiction in this Court.

## As and For a First Cause of Action

51. Plaintiff restates, repeats and reiterates the allegations contained in paragraphs 1 through 50 as if set forth at length herein.

52. Garcia is a member of a protected class (Hispanic/Latina) and she was qualified for the 2017 Position and the 2018 Positions.

53. The EPA has not provided any explanation to Garcia for its failure or refusal to select her for the 2017 Position and the 2018 Positions.

54. EPA Region 2 officials selected other EPA employees while purposefully stagnating Garcia's career and advancement by failing to allow her to advance to positions for which she was

equally or better qualified.

55.   The EPA's adverse actions are related, in whole or part, to Garcia's protected activities and her protected class.

56.   Title VII of the Civil Rights Act of 1964, 42 USC §2000e-2(a), makes it unlawful for an employer to limit, segregate, or classify  employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect her status as an employee, because of such individual's national origin. The law forbids discrimination in employment, including job assignments, promotions and other terms or conditions of employment.

57.   Under 29 CFR § 1606.1, national origin discrimination includes the denial of equal employment opportunity because of an individual's, or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group.

58.   More favorable treatment was accorded employees not in Garcia's protected group.

59.   The adverse employment actions took place under circumstances giving rise to an inference of unlawful discrimination.

60.   As a result of the EPA's conduct, Garcia has suffered damages including economic losses and emotional distress, in an amount to be determined at trial.

61.  The EPA's actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Garcia and in conscious disregard of her rights.

### As and For a Second Cause of Action

62.  Plaintiff restates, repeats and reiterates the allegations contained in paragraphs 1 through 61 as if set forth at length herein.

63. Under Title VII, it is unlawful for an employer to discriminate against an employee

because that employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

64.  Title VII is violated when "a retaliatory motive plays a part in adverse employment actions toward an employee, whether or not it was the sole cause." *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993). *Avillan v. Donahoe* (S.D. N.Y., 2015).

65.  Garcia establishes that she participated in a protected activity; to wit, her multiple EEO claims and her participation in the May 2016 MSPB proceeding wherein she testified against the EPA.

66.  The EPA was aware of her participation in the protected activity and that there was general agency knowledge that Garcia had engaged in protected activity.

67.  Upon such knowledge, the EPA subjected Garcia to materially adverse employment actions.

68. There is a causal connection between Garcia's protected activity and adverse employment action.

69.  As a result of the EPA's conduct, Garcia has suffered damages including economic losses and emotional distress, in an amount to be determined at trial.

70. Defendant's actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Garcia and in conscious disregard of her rights.

### Jury Demand

71.  Plaintiff demands a trial by jury.

**WHEREFORE,** Plaintiff respectfully requests that the Court enter judgment in his favor awarding the following relief:

1.  An order requiring Garcia's appointment to one of the 2018 Positions plus remedial back pay;

2.  Compensatory and punitive damages in an amount to be determined after a trial of the issues.

3.  Recovery of Garcia's reasonable costs and attorneys' fees in an amount to be determined after a trial of the issues.

4.  Such further relief as may be deemed appropriate by the Court.

Dated:  Brooklyn, New York
         September 12, 2019

                              **COREN LAW GROUP  P.C.**
                              *Attorneys for Plaintiff*

                              _____
                              By: Steven M. Coren
                              225 Union Street
                              Brooklyn, NY 11231
                              (212) 371-5800
                              scoren corenlawgroup.com